**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>DEAN FOODS COMPANY, *et al.*,[1]<br><br>                      Debtors. | Chapter 11<br><br>Case No. 19-36314 (DRJ)<br><br>(Jointly Administered) |
| Daniel H. Golden, as Liquidating Trustee of the DFC Liquidating Trust,<br><br>                      Plaintiff,<br><br>vs.<br><br>Kellogg Sales Company,<br><br>                      Defendant. | Adv. No. 21-03067 |

**PLAINTIFF'S MOTION AND MEMORANDUM OF LAW IN SUPPORT OF
SUMMARY JUDGMENT WITH RESPECT TO PLAINTIFF'S CLAIMS AGAINST
<u>DEFENDANT, KELLOGG SALES COMPANY</u>**

> **This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**
>
> **Represented parties should act through their attorney.**

---

[1] The debtors or liquidating debtors in these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Dean Foods Company (9681) and Dean Holding Company (8390). The liquidating debtors' mailing address is: Daniel H. Golden, Trustee, Dean Foods Company Estate & Liquidating Trust, In Care of BRG, 250 Pehle Avenue, Suite 301, Saddle Brook, NJ 07663, Attn: Rick Wright.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iv

I.      SUMMARY OF ARGUMENT .............................................................................. 1

II.     STATEMENT OF MATERIAL FACTS NOT IN DISPUTE.............................. 2

III.    ARGUMENT ......................................................................................................... 6

  A.  Legal Standard for Summary Judgment ................................................................ 6

  B.  The Transfers Were Property of the Debtors......................................................... 6

  C.  Plaintiff's *Prima Facie* Case is Satisfied ............................................................. 7

      1.      The Transfers Were Made to Defendant, a Creditor of the Debtors...................... 8

      2.      The Transfers Were on Account of Debt Owed by the Debtors Before the
              Transfers Were Made, and Were Therefore "Antecedent" Within the Meaning Of
              11 U.S.C. § 547(b)(2) ...................................................................................... 8

      3.      The Debtors Were Insolvent at All Times During the Preference Period and Have
              the Benefit of the Statutory Presumption of Insolvency Under 11 U.S.C. § 547(f) 8

      4.      The Transfers Occurred on Or Within 90 Days of The Petition Date ................... 9

      5.      The Transfers Enabled Defendant to Receive More Than It Would Have Received
              If the Transfers Had Not Been Made and Defendant Received Payment of Its
              Debt to The Extent Provided by The Bankruptcy Code ........................................ 9

  D.  The Plaintiff Need Not Introduce Evidence That the Exceptions to Avoidance Set Forth
      In 11 U.S.C. § 547(c) Are Inapplicable to The Transfers................................... 10

  E.  Viewing the Facts in a Light Most Favorable to The Defendant, The Defendant Is Unable
      to Prove by A Preponderance of the Evidence That It Is Entitled to the Ordinary Course
      of Business Defense Under 11 U.S.C. § 547(c)(2) ........................................... 11

      1.      Elements of the Ordinary Course of Business Defense. ..................................... 11

          a.  Elements of the Subjective Ordinary Course of Business Defense ............... 12

          b.  Elements of the Objective Ordinary Course of Business Defense ................ 14

      2.      Defendant Does Not Meet the Subjective Ordinary Course of Business Test Under
              11 U.S.C. § 547(c)(2)(A) ................................................................................ 14

          a.  The Vast Majority of Payments During the Historical Period Were Paid 16-25
              Days After Invoice Date .............................................................................. 15

       b.   The Vast Majority of Transfers Were Paid 61-65 Days After Invoice Date .. 15

       c.   The Transfers Demonstrate a Significant Shift in Payment Behavior..........15

       d.   Difference in Lateness is Magnified when Transfers are Compared with Transactions Prior to May 2019 …………………………………………..17

   3.     The Defendant Cannot Establish That It Meets the Objective Ordinary Course of Business Test Under 11 U.S.C. § 547(c)(2)(B) ..................................................... 19

IV.    CONCLUSION................................................................................................................ 20

# TABLE OF AUTHORITIES

## Federal Cases

*AFA Investment Inc. v. Dale T. Smith & Sons Meat Packing Co. (In re AFA Investment Inc.)*,
2016 WL 908212 (Bankr. D. Del. 2016) ……………………………………………………..14

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 106 S. Ct. 2505 (1986) ...................................................................... 6

*Baker Hughes Oilfield Operations, Inc. v. Cage (In re Ramba, Inc.)*,
416 F.3d 394 (5th Cir. 2005) ………………………………………………………………..8

*Barber v. Central Bank Illinois (In re Trappers Creek, LLC)*,
No. ADV. 09-8067, 2010 WL 797022 (Bankr. C.D. Ill. Mar. 5, 2010)................................. 8-9

*Barnhill v. Johnson*,
503 U.S. 393, 112 S. Ct. 1386 (1992) ………………….…………………………………………9

*Burtch v. Masiz (In re Vaso Active Pharmaceuticals, Inc.)*,
500 B.R. 384, 394 (Bankr. D. Del. 2013) …………………………………………...………...10

*Candy Fleet LLC v. Goodman*,
No. 6:14-1799, 2014 WL 5808357 (W.D. La. Sept. 26, 2014) …………...………………17-18

*Celotex Corp. v. Catrett*,
477 U.S. 317, 106 S. Ct. 2548 (1986) ...................................................................... 6

*Committee of Unsecured Creditors for Pittsburgh Cut Flower Co., Inc., v. Hoopes (In re Pittsburgh Cut Flower Co., Inc.)*,
124 B.R. 451 (Bankr. W.D. Pa. 1991) ...................................................................... 11

*Corel Petroleum, Inc. v. Banque Paribas-London*,
797 F.2d 1351 (5th Cir. 1986)...................................................................................... 7

*First Software Corp. v. Curtis Mfg. Co. (In re First Software Corp.)*,
81 B.R.211 (Bankr. D. Mass.1988)............................................................................ 11

*G.H. Leidenheimer Baking Co. v. Sharp (In re SGSM Acquisition Co.)*,
439 F.3d 233 (5th Cir. 2006) ……………………………………………...…11, 13-14, 16

*Gasmark Ltd. Liquidating Trust v. Louis Dreyfus Natural Gas Corp.*,
158 F.3d 312 (5th Cir. 1998) …………………………………………………...…..9, 13

*Giles v. Gen. Elec. Co.*,
245 F.3d 474 (5th Cir. 2001) ………………………………………………………...6

*Gulf City Seafoods, Inc. v. Ludwig Shrimp Co. (In re Gulf City Seafoods), Inc.)*,
296 F.3d 363 (5th Cir. 2002) …………………………………………………………....14

*Hasset v. Altai, Inc. (In re CIS Corp.)*,
214 B.R. 108 (S.D.N.Y. 1997).................................................................................. 11, 17

*Hutson v. Branch Banking & Trust Co. (In re Nat'l Gas Distrib., LLC)*,
346 B.R. 394 (Bankr. E.D.N.C. 2006) ...................................................................... 12

*In re ACP Ameri-Tech Acquisition, LLC,*
  2012 WL 481582 (Bankr. E.D. Tex. Feb. 14, 2012) …………………………………………..6

*In re Affiliated Foods Sw. Inc.*,
  750 F.3d 714 (8th Cir. 2014) ……………………………………………………………………17

*In re Alpha Ctr., Inc.*,
  165 B.R. 881 (Bankr. S.D. Ill. 1994) ..................................................................... 7

*In re Barber*,
  236 B.R. 655 (Bankr. N.D. Ind. 1998) ................................................................ 12

*In re Barefoot*,
  952 F.2d 795 (4th Cir. 1991) ……………………………..…………………………………14

*In re Blake*,
  401 B.R. 839 (Bankr. S.D. Tex. 2009) …………………………………………………..11

*In re Blue Glob., LLC*,
  591 B.R. 433 (Bankr. C.D. Cal. 2018) …………………………………………………...18

*In re Cyberrebate.com, Inc.,*
  296 B.R. 639 (Bankr. E.D.N.Y. 2003) ………………………………….…………………14

*In re Dobbs,*
  *115 B.R. 258 (Bankr. D. Idaho 1990)* .................................................................. 7

*In re Emas Chiyoda Subsea Limited*,
  2020 WL 1696105 (Bankr. S.D. Tex. Apr. 6, 2020) …………………………………..…...8-10

*In re Forklift LP Corp.*,
  2006 WL 2042979 (D. Del. 2006) …………………………………………….………...14

*In re Gulf Fleet Holdings, Inc.,*
  2013 WL 3230433 (Bankr. W.D. La. June 25, 2013)………………..………………...11, 16-17

*In re Hechinger Inv. Co. of Delaware, Inc.,*
  489 F.3d 568, 578 (3d Cir. 2007) …………………………………………………………14

*In re Magic Circle Energy Corp.,*
  64 B.R. 269 (Bankr. W.D. Okla. 1986) …………………………………………………13

*In re Molded Acoustical Prod., Inc.,*
  18 F.3d 217 (3d Cir. 1994).................................................................................. 1

*In re Quality Infusion Care, Inc.,*
  2013 WL 6189948 (Bankr. S.D. Tex. Nov. 25, 2013) …………………………..……………...11

*In re Quebecor World (USA), Inc.,*
  491 B.R. 379 (Bankr. S.D.N.Y. 2013) ……………..………………………………………17-18

*In re Schick*,
  234 B.R. 337 (Bankr. S.D.N.Y.1999) ……………………………………………………..13

*In re Sea Bridge Marine, Inc.*,
  412 B.R. 868 (Bankr. E.D. La. 2008) ……………………..…………………………………11

*In re Sierra Steel, Inc.*,
96 B.R. 271 (B.A.P. 9th Cir. 1989) ........................................................................ 7

*In re Tennessee Chemical Company*,
112 F.3d 234 (6th Cir. 1997) ................................................................................ 13

*In re Tolona Pizza Prods. Corp.*,
3 F.3d 1029 (7th Cir. 1993) .................................................................................. 18

*In re Tri-Union Dev. Corp.*,
349 B.R. 145 (Bankr. S.D. Tex. 2006) ................................................................. 14

*Jacobs v. Gramercy Jewelry Mrg. Corp. (In re M. Fabrikant & Sons, Inc.)*,
2010 WL 4622449 (Bankr. S.D.N.Y. Nov. 4, 2010) ................................. 12-13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574, 106 S. Ct. 1348 (1986) .................................................................. 6

*Milwaukee Cheese Wisconsin, Inc. v. Bukowski et al. (Milwaukee Cheese Wisconsin, Inc.)*,
164 B.R. 297 (Bankr. E.D. Wis. 1993) ................................................................ 11

*ML Associates, Inc. v. T & R Demolition, Inc. (In re ML Assocs., Inc.)*,
301 B.R. 195 (Bankr. N.D. Tex. 2003) .......................................................... 13-14

*Moser v. Bank of Tyler (In re Loggins)*,
513 B.R. 682 (Bankr. E.D. Tex. 2014) .................................................................. 9

*Off. Comm. of Unsecured Creditors v. CRST, Inc. (In re CGG 1355, Inc.)*,
276 B.R. 377 (Bankr. D.N.J. 2002) ...................................................................... 16

*Off. Plan Comm. v. Expeditors Int'l of Wash, Inc. (In re Gateway Pac. Corp.)*,
153 F.3d 915 (9th Cir. 1998) ................................................................................ 16

*Plan Administration Agent v. Coastal Industries, Inc. (In re Kevco, Inc.)*, Adv. No. 04-04239-
BJH, 2005 WL 6443621 (Bankr. N.D. Tex. Jun. 30, 2005) ............................. 12-13

*Ragsdale v. Citizens and S. Nat'l Bank* (*In re Control Elec., Inc.*),
91 B.R. 1010 (Bankr. N.D. Ga. 1988) ................................................................... 9

*Siegel v. Russellville Steel Company, Inc. (In re Circuit City Stores, Inc.)*,
479 B.R. 703 (Bankr. E.D. Va. 2012) ................................................................... 18

*SPW Corp. v. A.P.V. Equip., Inc. (In re SPW Corp.)*,
96 B.R. 676 (Bankr. N.D. Tex. 1989) .................................................................. 13

*Steinberg v. NCNB Nat'l Bank of N. Carolina* (*In re Grabill Corp.*),
135 B.R. 101 (Bankr. N.D. Ill. 1991) .................................................................... 6

*Unsecured Creditors Comm. of Sparrer Sausage Co., Inc. v. Jason's Foods, Inc.*,
826 F.3d 388 (7th Cir. 2016) ........................................................................... 17-18

**Statutes**

11 U.S.C. § 547(b) ........................................................................................... passim

11 U.S.C. § 547(c) ........................................................................................... passim

11 U.S.C. § 547(f) ............................................................................................. 1, 8

11 U.S.C. § 547(g) ............................................................................................ 1, 8

**Rules**

Fed. R. Bankr. P. 7056 .............................................................................. 1, 2, 6, 11

Fed. R. Civ. P. 56 ................................................................................ 1, 2, 6, 11-12

**Other Authorities**

5 Alan N. Resnick & Henry J. Sommer, COLLIER ON BANKRUPTCY ¶ 547.04[2], at 547–51 (16th ed. 2010) ................................................................................................ 12

Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L 109–8, April 20, 2005, 119 Stat 23 ........................................................................................... 11

Pursuant to Federal Rule of Civil Procedure 56(a), made applicable herein pursuant to Federal Rule of Bankruptcy Procedure 7056, Daniel H. Golden, as Liquidating Trustee of the DFC Liquidation Trust (the "Trustee" or "Plaintiff"), hereby submits this Motion and Memorandum of Law (the "Motion") in Support of Summary Judgment with Respect to Plaintiff's Claims Against Defendant, Kellogg Sales Company (the "Defendant").

## I.   SUMMARY OF ARGUMENT

The preference statute's goals are to treat creditors fairly by prohibiting the debtor from preferring some of its creditors to the detriment of others, while also discouraging creditors from using strong-arm tactics to dismember a financially distressed debtor that ultimately lead the debtor to file bankruptcy.[2]  Avoidance and recovery of the transfers at issue in this case will accomplish both of these goals.

Plaintiff has satisfied the elements under 11 U.S.C. § 547(b)(1)-(2) and (4)-(5) of its *prima facie* case against Defendant, both through evidence presented *infra* and via admissions of Defendant. As for the insolvency requirement of 11 U.S.C. § 547(b)(3), Plaintiff is entitled to a presumption of insolvency under 11 U.S.C. § 547(f), and Defendant has no evidence to rebut the statutory presumption. Thus, Plaintiff meets all elements of 11 U.S.C. § 547(b), and summary judgment should be granted as a matter of law on Plaintiff's case in chief.

The Transfers are avoidable unless they are protected by one of the exceptions to avoidance under 11 U.S.C. § 547(c). Pursuant to 11 U.S.C. § 547(g), Defendant bears the burden of proof of its 11 U.S.C. § 547(c) defenses.  There is no evidence to support an ordinary course of business defense, and Defendant is unable to meet its burden as to this defense due to the sizeable shift in timing of payments leading up to and throughout the Preference Period.  Nor can Defendant

---

[2] *See In re Molded Acoustical Prod., Inc.*, 18 F.3d 217, 219 (3d Cir. 1994).

establish any other affirmative defense.   Accordingly, Plaintiff should be granted summary judgment as a matter of law and judgment should be entered in favor of the Plaintiff and against the Defendant in the amount of $430,869.26 plus interest.

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Federal Rule of Civil Procedure 56(a), made applicable by Federal Bankruptcy Rule 7056, Plaintiff contends the following facts are not in dispute:

**Undisputed Facts Concerning the Bankruptcy**

1.    On November 12, 2019 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.

2.    On November 12, 2019, the Court entered an order authorizing the joint administration of the Debtors' chapter 11 cases under the original lead case captioned *In re Southern Foods Group, LLC, et al.* pursuant to Bankruptcy Rule 1015(b). [Case No. 19-36313, D.I. 9].

3.    On March 17, 2021, the Court entered an order confirming the *First Amended Joint Chapter 11 Plan of Liquidation of Southern Foods Group, LLC, Dean Foods Company, and Their Debtor Affiliates* (the "Confirmation Order" and "Plan," respectively).[3] [Case No. 19-36313, D.I. 3565].

4.    On May 25, 2021, the Court entered the *Final Decree and Order (I) Closing Certain Chapter 11 Cases, (II) Terminating Certain Claims and Noticing Services, (III) Amending the Order Directing Joint Administration of Chapter 11 Cases, and (IV) Granting Related Relief* which, among other things, provided that (i) Dean Foods Company and Dean

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan, Confirmation Order, and/or Liquidating Trust Agreement. *See* Case No. 19-36313, D.I. 3557-1.

Holding Company (together, the "Remaining Debtors"), the Liquidating Trustee, and the Liquidating Trust each (a) remain a representative of each of the Closing Debtors[4] and their estates for purposes of section 1123(b)(3)(B) of the Bankruptcy Code and (b) retain all rights, interests, powers, and authorities relating to the Liquidation Trust Assets (as defined in the Plan), including, for the avoidance of doubt, all Causes of Action; and (ii) directed that the Remaining Debtors' cases shall remain open and shall be jointly administered under Case No. 19-36314 of Dean Foods Company [Bankr. Case No. 19-36313, D.I. 4057].

5.     The effective date of the Plan (the "Effective Date") occurred on May 28, 2021. [Bankr. Case No. 19-36313, D.I. 4063; Bankr. Case No. 19-36314, D.I. 26]. In accordance with the Plan and Confirmation Order, the DFC Liquidating Trust (the "Trust") was established as of the Effective Date of the Plan, and the Debtors and the Trustee entered into that certain Liquidating Trust Agreement. [Bankr. Case No. 19-36313, D.I. 4065; Bankr. Case No. 19-36314, D.I. 27]

6.     Pursuant to paragraph 8 of the Confirmation Order and Article IV, Section A of the Plan, the Liquidating Trust Assets, including Avoidance Actions arising under chapter 5 of the Bankruptcy Code, were transferred to the Trust. [Bankr. Case No. 19-36313, D.I. 3565].

7.     Pursuant to the Plan, Confirmation Order, and Liquidating Trust Agreement, Plaintiff was appointed as the Trustee. Plaintiff is authorized and has standing, among other things, to prosecute, compromise, settle, abandon, dismiss, or otherwise dispose of causes of action under chapter 5 of the Bankruptcy Code.  Pursuant to Article V, Section C of the Plan, the Trustee shall

---

[4] The Closing Debtors are all of the Debtors that were jointly administered under Case No. 19-36313 other than the Remaining Debtors. The list of Debtors can be found at https://dm.epiq11.com/case/southernfoods/info.

be automatically substituted or supplemented as a real party in interest in any litigation commenced prior to the Effective Date by the Debtors.[5]

8.      Pursuant to Article III of the Plan and Article I.D of the Disclosure Statement [Case No. 19-36313, D.I. 3399], General Unsecured Claims comprise an impaired class of creditors and are expected to be paid less than 1% of the face amount of their claims.

**Undisputed Facts Concerning the Adversary Proceeding**

9.      On April 28, 2021, Plaintiff filed the *Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 547, 548 and 550 and to Disallow Claims Pursuant to 11 U.S.C. § 502* (the "Complaint"), initiating this adversary proceeding (the "Adversary Proceeding").  [D.I. 1.]

10.      Defendant filed an answer ("Answer") to the Complaint on July 30, 2021. [D.I. 8.]

11.      On or about April 20, 2022, Defendant caused to be served Defendant's Responses to Plaintiff's First Set of Interrogatories, Request for Production and Requests for Admission (the "Discovery Responses"). A copy of the Discovery Responses is attached hereto as **Exhibit 1**.

**Undisputed Facts Concerning the Preference Period Transactions Between the Debtors and Defendant**

12.      The preference period in the Debtors' bankruptcy cases is the 90 days prior to and including the Petition Date, which is August 14, 2019 through November 12, 2019 (the "Preference Period").  Declaration of Daniel H. Golden, at ¶ 5 (hereafter, "Golden Decl. at ¶ ___").  A copy of the Golden Declaration is attached hereto as **Exhibit 2**.

13.      During the Preference Period, Debtor Dean Foods Company paid to Defendant and Defendant received payments in the total sum of $399,189.26 (the "Dean Foods Transfers").

---

[5] The Complaint was initially filed in the name of Dean Foods Company and Dean Dairy Holdings, LLC.

Complaint ¶ 20, Ex. A; Answer ¶ 20; Golden Decl. at ¶ 6; Defendant's Admission Nos. 1 & 2 - admitting to receiving the Transfers).

14.     During the Preference Period, Debtor Dean Dairy Holdings, LLC ("Dean Dairy Holdings") paid to Defendant and Defendant received a payment of $31,680.00 (the "Dean Dairy Transfer" and, together with the Dean Foods Transfers, the "Transfers").  Complaint ¶ 21, Ex. B; Answer ¶ 21; Golden Decl. at ¶ 7.

15.     The Transfers were made for Defendant's benefit or the benefit of a creditor. Defendant's Admission No. 4 (admitting that the Transfers received in the Preference Period were for Defendant's benefit or that of a creditor).

16.     At the time of the Transfers, Defendant was a creditor of the Debtors. Defendant's Admission No. 5 (admitting that Defendant was a creditor of the Debtor at the time of the Transfers).

17.     Defendant had a right to receive the Transfers in satisfaction of or on account of a then-existing obligation or debt owed to it by the Debtors at the time of the Transfer.  Defendant's Admission No. 3 (admitting that Defendant had a right to receive the Transfers in satisfaction or on account of a then-existing debt at the time they were made).

18.     The Transfers constituted payment on antecedent debt, as they were made pursuant to obligations that arose prior to each payment.  Defendant's Admission No. 6 (admitting that each Transfer was made on account of an antecedent debt); Golden Decl. at ¶ 8, Exs. A, B.

19.     Defendant did not hold a fully perfected security interest in the assets of the Debtors.  Defendant's Admission No. 10 (admitting Defendant did not hold a perfected security interest).

## III.    ARGUMENT

### A.    Legal Standard for Summary Judgment

In accordance with Bankruptcy Rule 7056 which incorporates Federal Rule of Civil Procedure 56, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  The moving party bears the burden of demonstrating the absence of any genuine issue of material fact, and all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A fact is considered material if it might affect the outcome of the suit under governing law.  *See Id*. at 248.

If the moving party satisfies its burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "The mere existence of a scintilla of evidence" in support of the non-moving party is not sufficient to show a genuine issue of material fact. *Anderson*, 477 U.S. at 252.  "If a defendant fails to set forth specific facts that present a triable issue, its claims should not survive summary judgment."  *In re ACP Ameri-Tech Acquisition, LLC*, 2012 WL 481582 (Bankr. E.D. Tex. Feb. 14, 2012) (citing *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 494 (5th Cir. 2001)).

### B.    The Transfers Were Property of the Debtors

"For a transfer to be avoided under Section 547, 'it is essential that the debtor have an interest in the property transferred so that the estate is thereby diminished.'" *Steinberg v. NCNB Nat'l Bank of N. Carolina* (*In re Grabill Corp.*), 135 B.R. 101, 107 (Bankr. N.D. Ill. 1991)

(quoting *Corel Petroleum, Inc. v. Banque Paribas-London*, 797 F.2d 1351, 1355-56 (5th Cir. 1986), *rev denied*, 801 F.2d 398 (5th Cir. 1986)). "Money or funds paid from a commingled bank account are presumptively property of the debtor, and the transferee bears the burden of overcoming this presumption by tracing the money as trust assets." *In re Alpha Ctr., Inc.*, 165 B.R. 881, 886 (Bankr. S.D. Ill. 1994) *(citing In re Sierra Steel, Inc.*, 96 B.R. 271, 274, n. 5 (B.A.P. 9th Cir. 1989); *In re Dobbs,* 115 B.R. 258, 271 (Bankr. D. Idaho 1990))*.

In this case, the Transfers are presumptively the Debtors' property because the Transfers came from Debtors Dean Foods Company and Dean Dairy Holdings. *See* Statement of Undisputed Material Facts ("SUMF"), *supra,* ¶¶ 15-16.

## C.   Plaintiff's *Prima Facie* Case is Satisfied

When all inferences to be drawn from the underlying facts are viewed in the light most favorable to the Defendant, the pleadings and affidavits submitted in connection with this Adversary Proceeding show that there is no genuine issue as to the fact that the Plaintiff has alleged all of the necessary elements to satisfy its *prima facie* case under 11 U.S.C. § 547(b) and the Plaintiff is therefore entitled to judgment as a matter of law.

To be recoverable as a preferential transfer, a payment must satisfy all of the requirements of 11 U.S.C. § 547(b). Specifically, the transfer must have been:

> (1) made to or for the benefit of a creditor;
> (2) made for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made on or within ninety (90) days before the date of filing of the petition; and
> (5) enabled the benefited creditor to receive more than such creditor would have received had the case been a chapter 7 liquidation and the creditor not received the transfer.

11 U.S.C. § 547(b).

The trustee or debtor in possession bears the burden of proving each of these elements

by a preponderance of the evidence. 11 U.S.C. § 547(g); *In re Emas Chiyoda Subsea Limited*, 2020 WL 1696105 (Bankr. S.D. Tex. Apr. 6, 2020).

      **1.**      **The Transfers Were Made to Defendant, a Creditor of the Debtors**

The Defendant received the Transfers sought to be recovered by the Plaintiff, as listed on Exhibits A and B to the Complaint. *See* SUMF ¶¶ 13-14.   The Transfers were made for the Defendant's benefit or the benefit of a creditor. Further, at the time each Transfer was made, the Defendant was a creditor of the Debtors. *See* SUMF ¶¶ 17-18.

      **2.**      **The Transfers Were on Account of Debt Owed by the Debtors Before the Transfers Were Made, and Were Therefore "Antecedent" Within the Meaning Of 11 U.S.C. § 547(b)(2)**

A debt is antecedent if it is incurred prior to the transfer in question. *Baker Hughes Oilfield Operations, Inc. v. Cage (In re Ramba, Inc.)*, 416 F.3d 394, 399 (5th Cir. 2005). The facts in this case establish that the Transfers were payment on antecedent debts, as the payments were made pursuant to obligations that arose prior to the payments. Specifically, the Transfers were made in satisfaction of invoices that predated each corresponding Transfer.  Golden Decl. at ¶ 8; Exs. A and B (list of invoices paid by the Transfers).   Therefore, Defendant had a right to receive the Transfers in satisfaction of or on account of a then-existing obligation or debt owed to it by the Debtors at the time the payment was made. *See* SUMF ¶¶ 19-20.

      **3.**      **The Debtors Were Insolvent at All Times During the Preference Period and Have the Benefit of the Statutory Presumption of Insolvency Under 11 U.S.C. § 547(f)**

For purposes of the third element, a debtor is presumed insolvent during the ninety (90) days preceding the filing of the petition. *See* 11 U.S.C. § 547(f); *In re Emas Chiyoda Subsea Limited*, 2020 WL 1696105, * 5. "[A] creditor's knowledge or belief about a debtor's solvency is not relevant to whether a transfer may be avoided as a preference." *Barber v. Central Bank Illinois (In re Trappers Creek, LLC)*, No. ADV. 09-8067, 2010 WL 797022, at *4 (Bankr. C.D. Ill. Mar.

5, 2010) (citing *Ragsdale v. Citizens and S. Nat'l Bank* (*In re Control Elec., Inc.*), 91 B.R. 1010, 1015 (Bankr. N.D. Ga. 1988)). The presumption is rebuttable, but the creditor has the burden to produce some evidence that the debtor was solvent at the time of the transfer. *In re Emas Chiyoda Subsea Limited*, 2020 WL 1696105, * 5 (citing *Gasmark Ltd. Liquidating Trust v. Louis Dreyfus Natural Gas Corp.*, 158 F.3d 312, 315 (5th Cir. 1998)).

In the instant case, the Defendant has failed to produce or introduce any evidence to overcome the presumption. Further, the combination of secured and unsecured claims against the Debtors' bankruptcy estates greatly exceeds available assets. *See* Disclosure Statement Art. I, Sect. D; Golden Decl. at ¶ 10. The Debtors are therefore presumed to have been insolvent during the ninety (90) days prior to the Petition Date. The Debtors' insolvency cannot be questioned and there is no issue as to the Plaintiff's success on this element of its claim.

4. **The Transfers Occurred on or Within 90 Days of The Petition Date**

For purposes of Section 547(b)(4), a transfer by check occurs when the check is honored. *See Barnhill v. Johnson*, 503 U.S. 393, 400, 112 S. Ct. 1386, 1390 (1992) ("for the purposes of payment by ordinary check, therefore, a 'transfer' as defined by § 101(54) occurs on the date of honor, and not before"). The Preference Period in this matter is August 14, 2019 through November 12, 2019. The Transfers were made during the Preference Period. *See* SUMF ¶¶ 12-14.

5. **The Transfers Enabled Defendant to Receive More Than It Would Have Received If the Transfers Had Not Been Made and Defendant Received Payment of Its Debt to The Extent Provided by The Bankruptcy Code**

Whether a transfer meets the test of Section 547(b)(5) of the Bankruptcy Code requires the formulation of a hypothetical chapter 7 distribution of the debtor's estate as it existed on the bankruptcy petition date. *In re Emas Chiyoda Subsea Limited*, 2020 WL 1696105, * 6 (citing *Moser v. Bank of Tyler (In re Loggins)*, 513 B.R. 682, 707 (Bankr. E.D. Tex. 2014)). Courts must determine whether the creditor obtained more pursuant to the transfer than the creditor would have

received in a chapter 7 distribution without the transfer. 11 U.S.C. § 547(b)(5).  As long as the

distribution in bankruptcy is less than 100%, any payment on account of an unsecured creditor

during the Preference Period will enable that creditor to receive more than it would have received

in liquidation had the payment not been made.  *In re Emas Chiyoda Subsea Limited*, 2020 WL

1696105, * 6 (citing *Burch v. Masiz (In re Vaso Active Pharmaceuticals, Inc.*), 500 B.R. 384, 394

(Bankr. D. Del. 2013)).  Impairment of a class of general unsecured creditors in a confirmed

bankruptcy plan is evidence that a creditor would not have received a 100% payout in a Chapter 7

liquidation.  *Id.*

In the instant case, unsecured creditors will receive far less than a 100% payout as required

to render inapplicable 11 U.S.C. § 547(b)(5).  The combination of secured and unsecured claims

greatly exceeds available assets. Accordingly, distributions to general unsecured creditors will be

far less than 100%.  Golden Decl. at ¶ 10.  Defendant is an unsecured creditor, as it did not hold

a perfected security interest in the assets of the Debtors with respect to the Transfers.  *See* SUMF

¶ 21.  Plaintiff has accordingly met his burden of proving that the Transfers enabled the Defendant

to receive more than it would have received had the Debtors filed a chapter 7 case without having

made the Transfer at issue.

In summary, the pleadings in this Adversary Proceeding, together with the declaration

and attached exhibits, show there is no genuine issue as to any material fact with respect to the

avoidability of the Transfers under Section 547(b). Accordingly, unless the Defendant is able to

establish an affirmative defense under Section 547(c), the Plaintiff is entitled to judgment as a

matter of law.

**D.      The Plaintiff Need Not Introduce Evidence That the Exceptions to Avoidance Set Forth In 11 U.S.C. § 547(c) Are Inapplicable to the Transfers**

The moving party on summary judgment has no burden to negate or disprove matters for

which the opponent has the burden of proof at trial. The Defendant has the burden of proving the

non-avoidability of the Transfers under 11 U.S.C. § 547(c) by a preponderance of the evidence.

*See G.H. Leidenheimer Baking Co. v. Sharp (In re SGSM Acquisition Co.)*, 439 F.3d 233, 239 (5th

Cir. 2006).   As to these affirmative defenses, the Plaintiff need only establish the absence of

sufficient evidence to establish such defenses, but can also demonstrate affirmatively that there is

no triable issue of fact as to each element of the defense.   *See In re Quality Infusion Care, Inc.*,

2013 WL 6189948, at * 4 (Bankr. S.D. Tex. Nov. 25, 2013) (citing *In re Gulf Fleet Holdings, Inc,*

2013 WL 3230433, at * 2 (Bankr. W.D. La. June 25, 2013); *In re Blake*, 401 B.R. 839, 843 (Bankr.

S.D. Tex. 2009).   Moreover, courts have repeatedly held that the exceptions contained in 11 U.S.C.

§ 547(c), including the ordinary course of business exception, "must be narrowly construed." *In*

*re Sea Bridge Marine, Inc.*, 412 B.R. 868, 872 (Bankr. E.D. La. 2008); *Milwaukee Cheese*

*Wisconsin, Inc. v. Bukowski et al. (Milwaukee Cheese Wisconsin, Inc.)*, 164 B.R. 297, 306 (Bankr.

E.D. Wis. 1993) (citing *Committee of Unsecured Creditors for Pittsburgh Cut Flower Co., Inc., v.*

*Hoopes (In re Pittsburgh Cut Flower Co., Inc.),* 124 B.R. 451, 460 (Bankr. W.D. Pa. 1991); *Hasset*

*v. Altai, Inc. (In re CIS Corp.)*, 214 B.R. 108, 119–20 (S.D.N.Y. 1997) (quoting, *inter alia*, *First*

*Software Corp. v. Curtis Mfg. Co. (In re First Software Corp.)*, 81 B.R.211, 213 (Bankr. D. Mass.

1988)).

E.   **Viewing the Facts in a Light Most Favorable to The Defendant, The Defendant Is Unable to Prove by A Preponderance of the Evidence That It Is Entitled to an Ordinary Course of Business Defense Under 11 U.S.C. § 547(c)(2)**

1.   **Elements of the Ordinary Course of Business Defense.**

Section 547(c) of the Bankruptcy Code, as amended by the Bankruptcy Abuse Prevention

and Consumer Protection Act of 2005 ("BAPCPA")[6], permits a "safe harbor" for a transferee of

---

[6] Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L 109–8, April 20, 2005, 119 Stat 23

a preferential payment that can satisfy the requirements set forth in either 11 U.S.C. § 547(c)(2)(A) or § 547(c)(2)(B):

> (c) The trustee may not avoid under this section a transfer –
>> (2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was –
>>> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
>>> (B) made according to ordinary business terms.

11 U.S.C. § 547(c)(2).

This section, as amended, provides for two "separate, independent" defenses. *See Hutson v. Branch Banking & Trust Co. (In re Nat'l Gas Distrib., LLC)*, 346 B.R. 394, 396 (Bankr. E.D.N.C. 2006) (stating that the post-BAPCPA version of Section 547(c)(2) includes an "ordinary course of business" defense under subsection (A), as well as an "ordinary business terms" defense under subsection (B)).

### a.  Elements of the Subjective Ordinary Course of Business Defense

The ordinary course of business ("OCB") defense "is intended to protect recurring, customary credit transactions that are incurred and paid in the ordinary course of business of the debtor and the debtor's transferee." *Jacobs v. Gramercy Jewelry Mrg. Corp. (In re M. Fabrikant & Sons, Inc.)*, 2010 WL 4622449, at *2 (Bankr. S.D.N.Y. Nov. 4, 2010) (*citing* 5 Alan N. Resnick & Henry J. Sommer, COLLIER ON BANKRUPTCY ¶ 547.04[2], at 547–51 (16th ed. 2010)).  Courts examine a variety of factors when determining whether preference period payments are subjectively ordinary between the parties, including:

> (1) the length of time the parties were engaged in the transaction at issue;
> (2) whether the amount or form of tender differed from past practices;
> (3) whether the debtor or creditor engaged in any unusual collection or payment activity; and
> (4) the circumstances under which the payment was made.

*Plan Administration Agent v. Coastal Industries, Inc. (In re Kevco, Inc.)*, Adv. No. 04-04239-BJH,

2005 WL 6443621, *12 (Bankr. N.D. Tex. Jun. 30, 2005) (internal citations omitted). "If any one factor is 'compellingly inconsistent' with prior transactions, the transfer should be considered outside the ordinary course of business." *Id.* (collecting cases).

The subjective OCB defense examines whether the payments made to the creditor by the debtor during the preference period are consistent with their historical dealings. *ML Assoc., Inc. v. T & R Demolition, Inc. (In re ML Assocs., Inc.)*, 301 B.R. 195, 204 (Bankr. N.D. Tex. 2003); *SPW Corp. v. A.P.V. Equip., Inc. (In re SPW Corp.)*, 96 B.R. 676, 681 (Bankr. N.D. Tex. 1989) (quoting *In re Magic Circle Energy Corp.*, 64 B.R. 269, 273 (Bankr. W.D. Okla. 1986)) ("[T]he cornerstone of this element [ordinary course of business] of a preference defense is that the creditor needs to demonstrate [sic] some consistency with other business transactions between the debtor and the creditor."). Late payments are typically not ordinary unless the creditor establishes a consistent pattern of late payments between the parties. *In re Tennessee Chemical Company*, 112 F.3d 234, 244 (6th Cir. 1997).

When assessing whether the preference period transfers fall within the parties' ordinary course of business, the Fifth Circuit has placed a particular emphasis on the timing of payments. *See Gasmark Ltd. Liquidating Tr. v. Louis Dreyfus Nat. Gas Corp.*, 158 F.3d 312, 317 (5th Cir. 1998) (stating that the analysis focuses on the time in which the debtor ordinarily paid the creditor). Thus, in order to establish the subjective criteria of 11 U.S.C. § 547(c)(2)(A), a creditor must generally produce some evidence of the "baseline of dealings" between the parties to "enable the court to compare the payment practices during the preference period with the prior course of dealings." *In re Schick*, 234 B.R. 337, 348 (Bankr. S.D.N.Y.1999). When comparing preference period payments to historical payments "[t]he starting point — and often ending point — involves the consideration of the average time of payment after the issuance of the invoice during the pre-

preference and post-preference periods, the so-called 'average lateness' computation theory." *In re M. Fabrikant & Sons, Inc.*, 2010 WL 4622449, *3 (Bankr. S.D.N.Y. Nov. 4, 2010).  In conjunction with examining the average, a review of the range of payments centered around the average and the aging of invoices in "buckets" can yield additional information on whether payments were ordinary. See, e.g., *In re Hechinger Inv. Co. of Delaware, Inc.*, 489 F.3d 568, 578 (3d Cir. 2007) (comparing percentage of preference period payments made within 0-10 days from invoice during the preference period with percentage of payments made during the same time period in the historical period); *AFA Investment Inc. v. Dale T. Smith & Sons Meat Packing Co. (In re AFA Investment Inc.)*, 2016 WL 908212 (Bankr. D. Del. 2016) (examining percentages and weighted averages when determining that defendant had not satisfied burden under ordinary course of business defense); *In re Forklift LP Corp.*, 2006 WL 2042979, *8 (D. Del. 2006) (same).

<b>b.     Elements of the Objective Ordinary Course of Business Defense</b>

Section 547(c)(2)(B), on the other hand, is an objective test concerned with the relationship between similarly-situated parties in the industry as a whole. See, e.g. *Gulf City Seafoods, Inc. v. Ludwig Shrimp Co. (In re Gulf City Seafoods, Inc.)*, 296 F.3d 363, 369 (5th Cir. 2002).  "[T]he question must be resolved by consideration of the practices in the industry—not by the parties' dealings with each other." *In re ML & Assocs., Inc.*, 301 B.R. 195, 206 (Bankr. N.D. Tex. 2003) (citing *Gulf City Seafoods, Inc.*, 296 F.3d at 369).  This can be accomplished by comparing "the credit arrangements between other similarly situated debtors and creditors in the industry."  *In re Tri-Union Dev. Corp.*, 349 B.R. 145, 151 (Bankr. S.D. Tex. 2006) (citing *In re SGSM Acquisition Co., LLC*, 439 F.3d 233, 239 (5th Cir. 2006)).

### 2.     Defendant Does Not Meet the Subjective Ordinary Course of Business Test Under 11 U.S.C. § 547(c)(2)(A)

Defendant fails to satisfy the subjective ordinary course of business test under 11 U.S.C.

§ 547(c)(2)(A) by virtue of the fact that the payments were made far later than was typical between the parties.

        a.        **The Vast Majority of Payments During the Historical Period Were Paid 16-25 Days After Invoice Date**

Between November 2017 and August 13, 2019 (the "<u>Historical Period</u>"), Dean Foods Company made payments on 142 invoices. The average time between invoice and payment was 29.7 days past invoice date. 74% of invoices were paid between 16 and 25 days past invoice date. A summary of transactions during the Historical Period between Dean Foods Company and Defendant is attached to the Golden Declaration as **Exhibit C**. Golden Decl. at ¶¶ 11-12, Ex. C.

During the Historical Period, Dean Dairy Holdings made payments on 44 invoices. The average time between invoice and payment was 21.2 days past invoice date. 87% of invoices were paid between 16 and 25 days past invoice date. A summary of transactions during the Historical Period between Dean Foods Company and Defendant is attached to the Golden Declaration as **Exhibit D**. Golden Decl. at ¶¶ 11-12, Ex. D.

        b.    **The Vast Majority of the Transfers Were Paid 61-65 Days After Invoice Date**

During the Preference Period, Dean Foods Company made payments on 21 invoices. The average time between invoice and payment was 65.57 days. 95% of such payments were made between 61 and 65 days past invoice date. A summary of payments on invoices during the Preference Period is attached to the Golden Declaration as **Exhibit A**. Golden Decl. at ¶¶ 8, 11-12, Ex. A.

During the Preference Period, Dean Dairy Holdings paid a single invoice 51 days after the invoice date. A summary of the invoice paid by the Dean Dairy Transfer is attached to the Golden Declaration as **Exhibit B**. Golden Decl. at ¶¶ 8, 11-12, Ex. B.

### c. The Transfers Demonstrate a Significant Shift in Payment Behavior

Statistically, the difference in timing of payments between the Historical and Preference Periods is palpable. Dean Foods Company historically paid invoices within 29.7 days of the invoice date, on average. Golden Decl., Ex. C. In contrast, the average timing for payments ballooned to 65.6 days during the Preference Period, or more than twice as long as the historical average. Golden Decl., Ex. A. Each of the Dean Foods Transfers paid invoices more than 60 days past invoice date, while less than 25% of historical payments were paid so late. Golden Decl., Exs. A, C.

A similar shift to late pay occurred with the Dean Dairy Transfer. The Dean Dairy Transfer paid a single invoice 51 days after invoice date. Golden Decl., Ex. B. Historically, Dean Dairy Holdings paid 20 out of 21 invoices within 33 days of invoice with an average days to pay of 21.2 days. Golden Decl., Ex. D. Like the timing of the Dean Foods Transfers, the length of time Dean Dairy Holdings took to make the Dean Dairy Transfer was more than double that of historical payments.

The Debtors' clear and significant shift to late pay on the part of the Defendant is the hallmark of a preference. Indeed, courts have relied on much smaller variances in payment timing to avoid transfers as preferential. *See, e.g., In re SGSM Acquisition Co., LLC*, 439 F.3d 233, 240 (5th Cir. 2006) (analyzing the average time between invoice and payment during the pre-preference period to the preference period, finding that a 17-day difference in the averages was outside the ordinary course of business); *In re Gulf Fleet Holdings, Inc.*, No. 10-50713, 2014 WL 1168885, at *3 (Bankr. W.D. La. Mar. 21, 2014) (finding that the average payment gap in the historical period (13 days) differed materially from the average payment gap in the preference period (22.5 days)); *Off. Plan Comm. v. Expeditors Int'l of Wash, Inc. (In re Gateway Pac. Corp.)*, 153 F.3d 915, 918 (9th Cir. 1998) (payments not ordinary when there is a 19-day (54%) difference between the historical and preference periods); *Off. Comm. of Unsecured Creditors v. CRST, Inc.*

*(In re CGG 1355, Inc.)*, 276 B.R. 377, 383-84 (Bankr. D.N.J. 2002) (not ordinary when payments made, on average, 89.5 days from invoice during preference period compared to 66.47 days from invoice historically, including 73.4 days during final year of relationship (35% and 24% increases, respectively); *In re CIS Corp.*, 214 B.R. at 120 (payments not ordinary when there was a 29 day (57%) increase from historical to preference period).

### d. Difference in Lateness is Magnified when Transfers are Compared with Transactions Prior to May 2019

Defendant will likely argue that payments within 61-65 days of invoice are ordinary because this timing was not unprecedented historically.  Indeed, during the Historical Period, approximately 17% of invoices were paid within a 61-65 day range.  **Exhibits C, D**.  However, a closer inspection of the parties' transactions reveals that the bulk of the historical 61-65 day payments occurred just a few months before the Preference Period, and were otherwise not at all common in the parties' historical course of dealing.

When assessing the ordinariness of Preference Period payments, courts apply a historical baseline representative of when the Debtors were financially healthy.  *See, e.g.*, *In re Gulf Fleet Holdings, Inc.*, No. 10-50713, 2014 WL 1168885, at *3 (Bankr. W.D. La. Mar. 21, 2014), aff'd sub nom., *Candy Fleet LLC v. Goodman*, No. 6:14-1799, 2014 WL 5808357 (W.D. La. Sept. 26, 2014) (finding that the "parties payment history during 2008 was a sounder baseline for purposes of the ordinary course of business defense, and did not include the "first four months of 2009 because of [the Debtor's] deteriorating financial condition in 2009."); *Unsecured Creditors Comm. of Sparrer Sausage Co., Inc. v. Jason's Foods, Inc.*, 826 F.3d 388, 394 (7th Cir. 2016) ("the baseline should reflect payment practices that the companies established before the onset of any financial distress associated with the debtor's impending bankruptcy"); *In re Affiliated Foods Sw. Inc.*, 750 F.3d 714, 720 (8th Cir. 2014) ("To make a sound comparison, '[n]umerous decisions

support the view that the historical baseline should be based on a time frame when the debtor was financially healthy.'"); *In re Quebecor World (USA), Inc.*, 491 B.R. 379, 387 (Bankr. S.D.N.Y. 2013).  Thus, the transfers at issue should conform to "the norm established by the debtor and creditor in the period before, preferably well before, the preference period."  *In re Tolona Pizza Prods. Corp.*, 3 F.3d 1029, 1032 (7th Cir. 1993).

Courts give greater weight to transactions when the debtors were healthy, and in some cases will exclude from the subjective analysis payments occurring when the debtor was not healthy.  *See Sparrer Sausage*, 826 F.3d 388; *Goodman v. Candy Fleet, LLC (In re Gulf Fleet Holdings, Inc.)*, Civ. Act. No. 6:14-1799 (W.D. La. Sept. 26, 2014); *Siegel v. Russellville Steel Company, Inc. (In re Circuit City Stores, Inc.)*, 479 B.R. 703 (Bankr. E.D. Va. 2012).  Where a debtor's payment practices abruptly change after a material deterioration in its finances, such that a "new paradigm" with respect to payment practices comes into existence, payments subsequent to the financial deterioration should be excluded from the baseline period.  *In re Blue Glob., LLC*, 591 B.R. 433, 446 (Bankr. C.D. Cal. 2018) (citing *Siegel v. Russellville Steel Co., Inc. (In re Circuit City Stores, Inc.)*, 479 B.R. 703, 710 (Bankr. E.D. Va. 2012)).

According to their CFO, the Debtors' slide into bankruptcy was underway well into the second quarter of 2019.  As reflected in the Declaration of Gary Rahlfs in Support of Debtors' Chapter 11 Proceedings and First Day Pleadings [Case 19-36313 D.I. 46] (the "Rahlfs Declaration"), which Declaration is incorporated by reference herein:

- In February 2019, as a result of significant declines in its sales volumes and increased costs, the Debtors were forced to replace their prior senior secured revolving credit facility with a new credit facility with a significantly smaller borrowing base and tighter fixed charge coverage ratio.  Rahlfs Declaration at ¶ 51.

- Also in February 2019, as a result of tight liquidity, the Debtors suspended dividend payments to shareholders.  Rahlfs Declaration at ¶ 52.

18

- In February 2019, the Debtors retained an investment banking advisory firm to evaluate strategic alternatives, including the sale of assets or enterprises, but none of these options could be pursued due in large part to significant contingent liabilities the Debtors faced in connection with pension plans.  Rahlfs Declaration at ¶ 56.

- The Debtors' second quarter 2019 results forced it to reduce its internal full year operating income forecast to show that it would be a net user of cash in 2019.  Rahlfs Declaration at ¶ 57.

Historically, the Debtors rarely paid Defendant more than 30 days after invoice date prior to May 2019.  As reflected in the parties' transaction history, between November 2017 and April 2019, the Debtors paid Defendant within 21.8 days of invoice, on average, with more than 90% of payments occurring within 30 days of invoice.  Golden Decl., Exs. C, D.  The Debtors' payment behavior shifted dramatically beginning at the end of April 2019.  Between April 30, 2019 and August 13, 2019 (the day before the Preference Period), 85% of invoices were paid more than 60 days past invoice date.  This trend continued into the Preference Period when 95% of invoices were paid more than 60 days past invoice date.

The Debtors' sudden shift in payment practices, from 16-25 days historically to 61-65 days beginning in May 2019, coincided with their deteriorating financial position.  The Debtors were struggling to pay with the same frequency as was their norm as they slid toward bankruptcy.  This clear shift to later pay is indicative of non-ordinary payments and completely removes the Transfers from Section 547(c)(2)'s protection.

### 3.  The Defendant Cannot Establish That It Meets the Objective Ordinary Course of Business Test Under 11 U.S.C. § 547(c)(2)(B)

Defendant has submitted no evidence to suggest that it can meet the burden of establishing that the Transfer was made according to objective ordinary business terms in the Debtors' and Defendant's respective industries pursuant to 11 U.S.C. § 547(c)(2)(B). Defendant has failed to meet its burden as to this affirmative defense.  Should Defendant offer any evidence in support of an objective ordinary course defense, Plaintiff reserves the right to respond and refute such

evidence.

## IV.      CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an order granting summary judgment as to each *prima facie* element of Plaintiff's claims, and further finding that there is no genuine issue of material fact that would support an affirmative defense, and granting the Motion in its entirety and entering judgment in favor of Plaintiff in the principal amount of $430,869.26, plus pre-judgment interest.

Dated: October 14, 2022                    ASK LLP

                                           */s/ Nicholas C. Brown*
                                           Joseph L. Steinfeld, Jr., Esq., MN SBN 0266292
                                           Kara E. Casteel, Esq., MN SBN 0389115
                                           (*admitted pro hac vice*)
                                           Nicholas C. Brown, Esq., NC SBN 38054
                                           (*admitted pro hac vice*)
                                           2600 Eagan Woods Drive, Suite 400
                                           St. Paul, MN  55121
                                           Telephone: (651) 289-3850
                                           Fax: (651) 406-9676
                                           Email: jsteinfeld@askllp.com
                                                   kcasteel@askllp.com
                                                   nbrown@askllp.com

                                           *-and-*

                                           Edward E. Neiger, Esq.
                                           60 East 42nd Street, 46th Fl.
                                           New York, NY  10165
                                           Telephone: (212) 267-7342
                                           Email:  eneiger@askllp.com

                                           *Counsel to Daniel H. Golden, Liquidating Trustee*
                                           *of the DFC Liquidating Trust*

**CERTIFICATE OF SERVICE**

I certify that on October 14, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Nicholas C. Brown*
Nicholas C. Brown