**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| DEAN FOODS COMPANY, et al.[1] | Case No. 19-36314 (DRJ) |
| Debtors. | (Jointly Administered) |
| Daniel H. Golden, as Liquidating Trustee of the DFC Liquidating Trust, | Adv. Proc. No. 21-03067 (DRJ) |
| Plaintiff, | |
| v. | |
| KELLOGG SALES COMPANY, | |
| Defendant. | |

**DEFENDANT KELLOGG SALES COMPANY'S RESPONSE TO
PLAINTIFF'S MOTION AND MEMORANDUM OF LAW IN SUPPORT OF
SUMMARY JUDGMENT WITH RESPECT TO PLAINTIFF'S CLAIMS AGAINST
<u>DEFENDANT, KELLOGG SALES COMPANY</u>**
(Related Adv. Pro Docket Nos. 15 &16)

---

[1]   The debtors or liquidating debtors in these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows:  Dean Foods Company (9681) and Dean Holding Company (8390).  The liquidating debtors' mailing address is:  Daniel H. Golden, Trustee, Dean Foods Company Estate & Liquidating Trust, In Care of BRG, 250 Pehle Avenue, Suite 301, Saddle Brook, NJ 07663, Attn:  Rick Wright.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

JURISDICTION AND VENUE ...................................................................................... 3

FACTUAL BACKGROUND ......................................................................................... 3

ARGUMENT ................................................................................................................. 6

    A.    Applicable Summary Judgment Standards ...................................................... 6

    B.    The Trustee Cannot Establish that There is No Genuine Issue As to a
Material Fact Concerning His Prima Facie Case ............................................. 7

    C.    The Transfers are Excepted from Avoidance Pursuant to the Ordinary
Course of Business Defense of Section 547(c)(2) ........................................... 9

          i.    The Debts underlying the Transfers Were Incurred in the Ordinary
Course of Business ............................................................................... 10

          ii.    The Transfers are Generally Consistent with the Parties' Historical
Practice and Subject to the "Subjective" Ordinary Course of
Business Defense of Section 547(c)(2)(A) ........................................... 11

    D.    Kellogg Provided Subsequent Advances During the Preference Period
Under Section 547(c)(4) ................................................................................. 14

CONCLUSION ............................................................................................................. 16

## **TABLE OF AUTHORITIES**

### **CASES**

*Campo v. Allstate Ins. Co.*,
  562 F.3d 751, 754 (5th Cir. 2009) ........................................................................ 7
*Faulkner v. Lone Star Car Brokering, LLC (In re Reagor-Dykes Motors, LP)*,
  Nos. 18-50214-RLJ-11, 20-05028, 2022 Bankr. LEXIS 377, at *14 (Bankr. N.D. Tex. Feb. 15,
  2022) .................................................................................................................... 11
*G.H. Leidenheimer Baking Co., v. Sharp (In re SGSM Acquisition Co., LLC)*,
  439 F.3d 233, 241 (5th Cir. 2006) ...................................................................... 15
*Garner v. Knoll, Inc. (In re Tusa-Expo Holdings, Inc.)*,
  811 F.3d 786, 792 (5th Cir. 2016) ........................................................................ 7
*Geltzer v. Fleck (In re ContinuityX, Inc.)*,
  569 B.R. 29, 35 (Bankr. S.D.N.Y. 2017) ............................................................. 9
*Gulf City Seafoods, Inc. v. Ludwig Shrimp Co., Inc. (In re Gulf City Seafoods, Inc.)*,
  296 F.3d 363, 367 (5th Cir. 2002) ...................................................................... 10
H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 373 (1978), reprinted in 5 U.S.C.C.A.N. 6329
  (1978) .................................................................................................................. 10
*Hunter v. Snap-On Credit Corp. (In re Fox)*,
  229 B.R. 160, 164 (Bankr. N.D. Ohio 1998) ....................................................... 9
*In re La. Pellets*,
  605 B.R. 726, 731 (Bankr. W.D. La. 2019) ........................................................ 13
*In re Yurika Foods Corp.*,
  888 F.2d 42, 44 (6th Cir. 1989) .......................................................................... 14
*Laker v. Vallette (In re Toyota of Jefferson)*,
  14 F.3d 1088, 1093 n.2 (5th Cir. 1994) .............................................................. 15
*Malacara v. Garber*,
  353 F.3d 393, 405 (5th Cir. 2003) ........................................................................ 7
*Neuger v. United States (In re Tenna)*,
  801 F.2d 819, 821 (5th Cir. 1986) ........................................................................ 8
*Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*,
  520 F.3d 409, 412 (5th Cir. 2008) ........................................................................ 7
*Ogle v. Advent, Inc. (In re HDD Rotary Sales, LLC)*,
  Nos. 11-38053, 12-03269, 2012 Bankr. LEXIS 5903, at *3 (Bankr. S.D. Tex. Dec. 20, 2012) 6
Pollock v. Birmingham Tr. Nat'l Bank,
  650 F.2d 807, 810 (5th Cir. 1981) ........................................................................ 7
*Templeton v. O'Cheskey (In re Am. Hous. Found.)*,
  785 F.3d 143, 160 (5th Cir. 2015) ...................................................................... 10
*Troisio v. E.B. Eddy Forest Prods. (In re Glob. Tissue L.L.C.)*,
  106 F. App'x 99, 102 (3d Cir. 2004) .................................................................. 12
*Union Bank v. Wolas*,
  502 U.S. 151, 160 (1991) .................................................................................... 10

## STATUTES

11 U.S.C. § 547 ............................................................................................... 7, 9, 10, 14

28 U.S.C. § 1334 ..................................................................................................... 3

28 U.S.C. § 157 ....................................................................................................... 3

28 U.S.C. §§ 1408 and 1409 ................................................................................... 3

## RULES

Fed.R.Civ.P. 56 ................................................................................................... 6, 9

Federal Rule of Evidence 701 .................................................................................. 8

Kellogg Sales Company ("Defendant" or "Kellogg"), the defendant in the above-captioned adversary proceeding (the "Adversary Proceeding"), hereby responds (this "Response") to *Plaintiff's Motion and Memorandum of Law in Support of Summary Judgment with Respect to Plaintiff's Claims Against Defendant, Kellogg Sales Company* [Adv. Pro. Docket No. 15] (the "Motion"),[2] filed by Daniel H. Golden, in his capacity of the Liquidating Trustee of the DFC Liquidating Trust (the "Trustee" or "Plaintiff," and together with Kellogg, the "Parties"), as appointed in the above-captioned chapter 11 cases (the "Chapter 11 Cases") of Dean Foods Company, *et al.* (collectively, the "Debtors"). In support of this Response, Kellogg submits the declaration of Clint VanLanginham, attached hereto as **Exhibit A** (the "Kellogg Declaration"), and respectfully states as follows:

## PRELIMINARY STATEMENT

1.      As a threshold matter, the Trustee has not satisfied his burden to establish by summary judgment evidence each element of section 547(b) of the Bankruptcy Code. More specifically, the Trustee's **_only_** evidence apparently offered in support of the hypothetical liquidation test of section 547(b)(5) are the conclusory and unsupported statements that "the combination of secured and unsecured claims in *these cases* will be far greater than available assets" and that under the confirmed Plan, "distributions to general unsecured creditors, if any, will be far less than 100%." Golden Decl. ¶ 10 (emphasis supplied). These statements are, however, insufficient to meet the Trustee's burden under section 547(b)(5) because the relevant inquiry concerns general unsecured creditor recoveries in a hypothetical chapter 7, **_not_** what creditors' potential distributions may be under a plan of liquidation that consolidates the Debtors for distribution purposes. Moreover, the Trustee has not offered any evidence or analysis

---

[2]     A capitalized term used but not defined herein shall have the meaning ascribed to it in the Motion.

1

regarding the hypothetical liquidation of ***each*** of the Debtor-transferors, Dean Foods Company ("DFC") and Dean Dairy Holdings, LLC ("DDH"). As a result, the Trustee has not met his burden to establish that there are no genuine issues of material fact with respect to his *prima facie* case under Bankruptcy Code section 547(b).

2.      Even assuming that the Trustee has met his burden to satisfy the elements of section 547(b), Kellogg has strong defenses to the Trustee's claims. Initially, the Transfers are excepted from avoidance pursuant to the 'subjective' ordinary course of business defense set forth in section 547(c)(2). The court should reject the Trustee's implausible and hyperbolic statement that "[t]here is no evidence to support an ordinary course of business defense. . . ". Rather, the data clearly demonstrates that, for the duration of their relationship with Kellogg, the Debtors overwhelmingly paid invoices in two timeframes based upon the invoice credit terms (2% 15, net 45), either approximately 17-20 days after the invoice date to take advantage of the 2% early payment discount or, otherwise, approximately 61-65 days after the invoice date (a bit late on the 45 day term). While Kellogg's counsel has openly provided and explained this payment practice, the Trustee's Motion ignores these facts and that Kellogg treated all the Debtors the same.

3.      Moreover, payment timing is only one factor in the analysis of the ordinary course of business defense. None of the other potential indicia of inconsistency are present here. The Debtors always paid Kellogg by electronic funds transfer and, with a few *de minimis* exceptions prior to the Preference Period, always paid the full invoiced amount. Kellogg also did not engage in any atypical or extraordinary collection activities during the Preference Period, which is reflected by the consistency in the timing of payments therein. There is no factual basis for the Trustee's assertion that there is "no evidence to support an ordinary course of business defense . . . ."

4.     As an additional defense, Kellogg twice provided subsequent advances to the Debtors during the Preference Period following the earliest of the Transfers, entitling Kellogg to a partial defense of $24,776.50 under section 547(c)(4) and Fifth Circuit authority.  This partial defense is not necessary if, as Kellogg suggests, the Court finds that the Transfers are excepted from avoidance pursuant to the ordinary course of business defense.

5.     As set forth herein, the Trustee's Motion should be denied in its entirety.  Rather, if any party is entitled to summary judgment on these facts, it is Kellogg with its strong defenses to the Trustee's claims.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this case and this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  Pursuant to Local Rule 7012-1, Kellogg confirms its consent to entry of final orders and judgements by this Court.

## FACTUAL BACKGROUND

7.     Beginning in approximately November 2017, Kellogg began providing certain baked goods, principally crushed cookies, to the Debtors for use in certain varieties of ice cream they produced.  *See* Kellogg Declaration ¶ 3.   In order to obtain these crushed cookies from Kellogg, the Debtors would submit a purchase order from one of its manufacturing facilities for the product required. *Id.*   Thereafter, Kellogg would ship the requested crushed cookies to the Debtors' designated facility with an invoice for payment. *Id.*  The Debtors specified to which facility Kellogg should ship the products, but Kellogg's agreement as to invoice terms and the like were generally consistent across all of the Debtors, under the umbrella of Dean Foods Company,

with limited administrative adjustments for things like facility location, facility/brand name, and so forth.  *Id.*

8.      Kellogg received orders from, and issued its invoices to, the Debtors under substantially the same terms. With very few exceptions, Kellogg issued invoices on 2% 15, net 45 credit terms, which provided an 'early pay' discount of 2% if the Debtors paid Kellogg no later than 15 days following the invoice date, but payment was not due until 45 days following the invoice date.  *Id.* at ¶ 4.  Just a few months after the Parties' relationship began, the Debtors assert that they renegotiated their credit terms with Kellogg to 2% 15, net 60 terms.  Kellogg generally continued to issue its invoices with 2% 15, net 45 terms, consistent with its understanding of the credit terms in place.  *See id.*; Kellogg Declaration Exs. A-3.  However, the Debtors paid Kellogg based between the 61st and 65th day following the invoice (when not taking the discount), and Kellogg accepted these payments and continued to provide the products ordered by the Debtors. *Id.  See* Kellogg Declaration Ex. A-1.

9.      In approximately, August 2019, following a number of logistical difficulties and the sale of Kellogg's cookie business to a third party, the Debtors ceased ordering products from Kellogg in favor of another supplier.  *See* Kellogg Declaration ¶ 6.

10.      During the course of the Parties' relationship, Kellogg issued 168 invoices to the Debtors for the delivery of Kellogg's products.  *See* Kellogg Declaration Ex. A-1.  The Debtors generally paid the invoices issued to them by Kellogg either between the 17th and 20th day following the invoice date or between the 61st and 65th day.  *Id.*  The following chart depicts the invoice payment date for each invoice paid by the Debtors (in blue) with the overlay of the average invoice age upon payment of 32.36 days (in red).



11. The above chart clearly demonstrates that the Transfers during the Preference Period were very consistent with the Parties' historical relationship—20 of the 22 Transfers were made within 61-65 days of the invoice date, the range of the Parties' historical payment practice. Only twice or approximately 1.19% of the time did the Debtors make a payment within the historical average of 31-35 days because it bears no relationship to the parties' agreed invoice terms.

12. On April 28, 2021, the Trustee filed its complaint [Adv. Pro. Docket No. 1] (as may be amended, the "Complaint") against Kellogg, seeking under, *inter alia*, Bankruptcy Code section, 547(b), to avoid 22 payments, in the aggregate amount of $430,869.26, made by the

Debtors to Kellogg during the period (the "Preference Period") of August 14, 2019 to November 12, 2019, the date the Debtors fled their chapter 11 petitions for relief (the "Petition Date").

13.     On July 30, 2021, Kellogg filed its answer and affirmative defenses [Adv. Pro Docket No. 8] to the claims set forth in the Complaint.

14.     On October 14, 2022, the Trustee filed the Motion seeking summary judgement on the claims set forth in the Complaint.

## ARGUMENT

15.     Not only does the Trustee not satisfy his burden to establish a *prima facie* case under Bankruptcy Code section 547(b), but Kellogg has strong defenses to the Trustee's claims based upon the 'ordinary course of business' defense of Bankruptcy Code section 547(c)(2) and the subsequent advance defense of section 547(c)(4).

### A.     Applicable Summary Judgment Standards

16.     "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Bankruptcy Rule 7056 incorporates Rule 56 of the Federal Rules of Civil Procedure in adversary proceedings, such as this.

17.     "A party seeking summary judgment must demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine dispute of material fact. A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party." *Ogle v. Advent, Inc. (In re HDD Rotary Sales, LLC)*, Nos. 11-38053, 12-03269, 2012 Bankr. LEXIS 5903, at *3 (Bankr. S.D. Tex. Dec. 20, 2012) (internal citations omitted).   "The moving party bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine*

*Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008). A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009). Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial. *Id.* at 403. In addition, the Court may grant summary judgment in favor of the non-moving party. *See* Pollock v. Birmingham Tr. Nat'l Bank, 650 F.2d 807, 810 (5th Cir. 1981).

18.     In the context of a preference claim, the Trustee has the initial burden to establish the five elements of section 547(b), and the creditor holds the burden to prove any affirmative defenses under section 547(c). *See* 11 U.S.C. § 547(g).

**B.      The Trustee Cannot Establish that There is No Genuine Issue As to a Material Fact Concerning His Prima Facie Case**

19.     The Trustee does not meet his burden to establish his *prima facie* case under 547(b) because of the lack of relevant evidence as to the hypothetical chapter 7 liquidation test of section 547(b)(5). *See* 11 U.S.C. § 547(b)(5). The Fifth Circuit has articulated the relevant standard under section 547(b)(5) as:

> To determine whether a trustee has established this requirement, a court typically uses the so-called 'hypothetical Chapter 7 liquidation analysis' inherent in § 547(b)(5) itself. To do so, the court (1) constructs a hypothetical Chapter 7 liquidation in which the creditor retains the disputed transfers, viz., the transfers-retained hypothetical, and (2) constructs another in which the creditor returns those transfers, viz., the transfers-returned hypothetical. To establish the requirement of § 547(b)(5) under this analysis, the sum of (1) the disputed transfers and (2) the creditor's distribution in the transfers-retained hypothetical must be "more" than the creditor's distribution in the transfers-returned hypothetical.

*Garner v. Knoll, Inc. (In re Tusa-Expo Holdings, Inc.)*, 811 F.3d 786, 792 (5th Cir. 2016).

20.     Notwithstanding the Fifth Circuit's focus and analysis on the outcome of a hypothetical chapter 7 scenario, the Trustee provides only conclusory information for the Debtors on a consolidated basis, ostensibly across each of the forty-three Debtors in the Chapter 11 Cases. *See* Golden Decl. ¶ 10.  Moreover, the information provided by the Trustee with respect to potential distributions to general unsecured creditors is with respect to the Debtors' confirmed Plan.  *See id.* ("In the instant case, . . .").  This information is, however, irrelevant to the required Fifth Circuit analysis under section 547(b)(5), because the Plan "groups" the Debtors together for purposes of distribution. *See* Plan Art. III.A.1.

21.     Under the Plan, all remaining assets are vested in a liquidation trust and each general unsecured creditor receives a pro rata share of Liquidation Trust Assets, regardless of the Debtor against which the claim was asserted.  *See* Plan Art. III.B.6; s*ee also* Plan Art. I.A.92 (defining Liquidation Trust Assets as "all Cash and other assets of the Debtors or the Liquidating Debtors . . ."); Plan Art. IV.A.4 (vesting all liquidating trust assets, regardless of the Debtor or Liquidating Debtor from which they came, to be vested in the Liquidating Trust).

22.     Under Fifth Circuit authority, the hypothetical chapter 7 analysis of section 547(b)(5) is conducted as of a debtor's petition date and has nothing to do with any actual results under a confirmed chapter 11 plan.  *See Neuger v. United States (In re Tenna)*, 801 F.2d 819, 821 (5th Cir. 1986).  On the Petition Date, the Debtors were not consolidated for distribution purposes or in any other substantive respect.  Accordingly, the Trustee has not met his burden to present relevant evidence and analysis on a Debtor by Debtor basis.[3]

---

[3]   Kellogg objects to such statements for purposes of summary judgment because they lack foundation. Additionally, such statements purport to offer opinion testimony in violation of Federal Rule of Evidence 701. Moreover, pursuant to this Court's *Order Establishing Procedures Governing Certain Adversary Proceedings Commenced by the Debtors Pursuant to 11 USC §§ 547, 548, 549, and 550* [Docket No. 3646], the Trustee was required to identify expert witnesses for matter on which he holds the burden of proof by June 1, 2022.  No such expert witnesses were identified by the Trustee, including prior to the deadline to do so.

23.     The lack of meaningful facts and analysis presented by the Trustee in the Motion and Golden Declaration does not come close to meeting the Trustee's summary judgment burden. Courts have found that merely asserting that creditors will receive less than 100% recovery to be insufficient to meet their burden under section 547(b)(5).  *See Geltzer v. Fleck (In re ContinuityX, Inc.)*, 569 B.R. 29, 35 (Bankr. S.D.N.Y. 2017) ("Accordingly, simply demonstrating that creditors in the Debtors' Chapter 7 cases will receive less than a 100% distribution is insufficient here for purposes of section 547(b)(5). Instead, the Trustee must establish that creditors in the Debtors' chapter 7 cases would receive less than an approximate 76% distribution.").

24.     Ultimately, the Trustee was required to introduce as summary judgment evidence sufficient facts for this Court to conduct a hypothetical chapter 7 liquidation, consistent with Fifth Circuit authority.   The Trustee has failed to do so and, accordingly, has not met his burden.  *See, e.g., Hunter v. Snap-On Credit Corp. (In re Fox)*, 229 B.R. 160, 164 (Bankr. N.D. Ohio 1998) ("Therefore, Fed.R.Civ.P. 56 requires that in order for the Trustee to survive the Defendant's Motion for Summary Judgment, the Trustee must go beyond his mere pleadings, and is instead required to designate specific facts so as to make a showing sufficient to establish that the requirements of § 547(b)(5) are satisfied.").

C.     **The Transfers are Excepted from Avoidance Pursuant to the Ordinary Course of Business Defense of Section 547(c)(2)**

25.     The Bankruptcy Code provides a complete defense to preference actions under 547(b),

> (2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was—
>
> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or

(B) made according to ordinary business terms;

11 U.S.C. § 547(c)(2).

26.    "The ordinary course of business defense provides a safe haven for a creditor who continues to conduct normal business on normal terms.  This court has explained that, without this defense, the moment that a debtor faced financial difficulties, creditors would have an incentive to discontinue all dealings with that debtor and refuse to extend new credit. Thus, lacking credit, the debtor would face almost insurmountable odds in its attempt to make its way back from the edge of bankruptcy." *Templeton v. O'Cheskey (In re Am. Hous. Found.)*, 785 F.3d 143, 160 (5th Cir. 2015) (quoting *Gulf City Seafoods, Inc. v. Ludwig Shrimp Co., Inc. (In re Gulf City Seafoods, Inc.)*, 296 F.3d 363, 367 (5th Cir. 2002) (alteration in original) (internal marks omitted).  Moreover, "[t]he purpose of the ordinary course of business exception is to "leave undisturbed normal financial relations." *Union Bank v. Wolas*, 502 U.S. 151, 160 (1991) (quoting H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 373 (1978), reprinted in 5 U.S.C.C.A.N. 6329 (1978)).

### i.    The Debts underlying the Transfers Were Incurred in the Ordinary Course of Business

27.    The first element of the ordinary course of business test is that the antecedent debt underlying the preference claim at issue must have been incurred by a debtor in the ordinary course of its business or financial affairs.  The Trustee does not specifically deny that the debts corresponding to each Transfer were incurred in the ordinary course of business, claiming rather that, "[t]here is no evidence to support an ordinary course of business defense . . . ."  The evidence is clear, however, each of the debts corresponding to each Transfer was entirely ordinary for the Debtors.

28.    As detailed above, among the products produced by the Debtors were various ice cream products. *See* Kellogg Declaration, at ¶ 3.  In order to manufacture certain of the varieties

of these ice cream products, the Debtors required certain crushed cookie verities, which were procured from Kellogg.  *Id.*  In order to obtain these crushed cookies from Kellogg, the Debtors would submit a purchase order from one of its manufacturing facilities for the product required. Thereafter, the requested crushed cookies would be shipped by Kellogg to the Debtors and an invoice for the Debtors' payment for the crushed cookie shipment would be issued by Kellogg to the Debtors.  *Id.*  Based on this standard process, the first element of the ordinary course of business defense has been satisfied.

ii. **The Transfers are Generally Consistent with the Parties' Historical Practice and Subject to the "Subjective" Ordinary Course of Business Defense of Section 547(c)(2)(A)**

29.    The "subjective" prong of the ordinary course of business defense under Bankruptcy Code section 547(c)(2)(A) requires that the transfers that a plaintiff seeks to avoid be "made in the ordinary Couse of business of financial affairs of the debtor and the transferee."  "To determine whether transactions were ordinary under the subjective test, courts consider [1] whether the timing or amount of payments differed from past practices, [2] whether the creditor-transferee took advantage of the debtor's known deteriorating financial condition or engaged in unusual collection efforts, and [3] the length of time the parties were engaged in transactions."  *Faulkner v. Lone Star Car Brokering, LLC (In re Reagor-Dykes Motors, LP)*, Nos. 18-50214-RLJ-11, 20-05028, 2022 Bankr. LEXIS 377, at *14 (Bankr. N.D. Tex. Feb. 15, 2022).

30.    Here, during the Parties' business relationship, which existed from November 2017 through October 2019, the Debtors placed or were invoiced for 168 orders.  A chart comparing the frequency of payment date, as measured from the invoice date to the date the Debtors electronically transferred funds to Kellogg, during the entirety of the Parties' relationship (in blue,) with the frequency of payment date with respect to the Transfers in the Preference Period (in red), is below:



31.     The Court should reject the Trustee's suggested benchmark of mean payment timing (32.36 days on an aggregate basis),[4]  because it is not at all probative of the Parties' historical dealings.   *See Troisio v. E.B. Eddy Forest Prods. (In re Glob. Tissue L.L.C.)*, 106 F. App'x 99, 102 (3d Cir. 2004) ("The Trustee's reliance on the average payment time, as is often the case with statistics, does not portray the complete picture of [the Debtors] payment history.").

32.     As described above, the Debtors consistently paid the Kellogg invoices either around 15 days (to take the 2% early pay discount) or around 60 days (the due date of the invoices

---

[4]     Regardless of the exact Debtor or facility that placed its order with Kellogg, Kellogg treated all such facilities the same, as is relevant to the Court's preference analysis.  Accordingly, for purposes of the ordinary course of business defense, the Parties' dealings should be examined on an aggregate basis.  Moreover, as reflected in the charts contained in this Response, the Trustee's average payment dates for DFC and DDH, of 29.7 and 21.2, respectively, fare no better—the second most common time frame, by a significant margin, in which the Debtors made payments to Kellogg was between 61 and 65 days following the invoice date.

per the Debtors' understanding and which was routinely accepted by Kellogg). *See* Kellogg Declaration ¶ 4, Exs. A-1, A-2, A-3.

33.     Of the 168 paid invoices during the parties' relationship, the Debtors paid Kellogg 106 times (or approximately 63.1% of the total) in the range of 16-20 days and 45 times (or 27.8% of the total) in the range of 61-65 days.  Consistent with the Parties' historical practice, 20 of the 22 Transfers challenged by the Trustee were also made in this second most frequent payment timeframe of 61-65 days after invoice date.[5]  *See* Kellogg Declaration Exs. A-1, A-2.

34.     Given the overwhelming frequency of payments by the Debtors consistent with the two-tiered trade terms, the Court should reject the Trustee's assertions that the Preference Period payments reflect any change in the parties' behavior and that pure mean statistical analysis is of any probative value.

35.     While the trade terms explain the grouping of payments in these two ranges, the Parties are not confined to strict compliance with the trade terms for purposes of the "subjective" ordinary course of business defense.  The Parties' historical dealings remained generally consistent throughout their relationship, including during the Preference Period.  *See, e.g., In re La. Pellets*, 605 B.R. 726, 731 (Bankr. W.D. La. 2019) ("While it is possible to establish that the ordinary course of business between the parties included late payments, for any particular payment to qualify as ordinary, it must be consistent with the timing of other transactions. In other words, while the parties may be accustomed to somewhat late payments, abnormally late payments do not qualify as being made in the ordinary course of business."); *In re Yurika Foods Corp.*, 888 F.2d

---

[5]     The third most common payment timeframe of 21-25 days after invoice date is comprised of only 6 occurrences out of 168, and is thus not material, as well as substantially similar to the 16-20 day range.  The Debtors' payments overwhelmingly dropped off following the 20th day, reflecting the appropriate application Kellogg's date range benchmarks.

42, 44 (6th Cir. 1989) ("Normally, if late payments were the standard course of dealing between the parties, they shall be considered as within the ordinary course of business under section 547(c)(2)").

36.     Additionally, payment timing is only one of several factors to be considered in the ordinary course of business analysis, all of which reflect consistency with the Parties' prior conduct, and underscore the ordinariness of the Transfers.  Consistent with their general practice, the Debtors continued to pay the full invoiced amount *via* electronic transfer.  *See* Kellogg Declaration ¶ 5.  Moreover, Kellogg engaged in no unusual or extraordinary collection efforts during the Preference Period. *Id.*

37.     Accordingly, at least 20 of the 22 Transfers—those made between 60-65 days after the invoice date—are insulated from avoidance by the "subjective" ordinary course of business defense.

**D.      Kellogg Provided Subsequent Advances During the Preference Period Under Section 547(c)(4)**

38.     Section 547(c)(4) prohibits the avoidance of transfers:

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

> (A) not secured by an otherwise unavoidable security interest; and

> (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor;

11 U.S.C. § 547(c)(4).

39.     In the Fifth Circuit, courts apply a transfer by transfer approach which requires the movant to show "(1) new value was extended after the preferential payment sought to be avoided, (2) the new value is not secured with an otherwise unavoidable security interest, and (3) the new value has not been repaid with an otherwise unavoidable transfer." *G.H. Leidenheimer Baking*

*Co., v. Sharp (In re SGSM Acquisition Co., LLC)*, 439 F.3d 233, 241 (5th Cir. 2006) (quoting *Laker*

*v. Vallette (In re Toyota of Jefferson)*, 14 F.3d 1088, 1093 n.2 (5th Cir. 1994)) (internal marks

omitted).  "As long as new value meets the [foregoing three part test] it can be applied against any

preceding payment in the preference period.  *Id.*

40.     Kellogg shipped products to the Debtors following the earliest of the Transfers,

rendering $24,776.50 unavoidable by the Trustee.[6]  More particularly, Kellogg provided the

following subsequent advances ("Subsequent Advances") after the earliest of the Transfers:

| Debtor - Transferor | Invoice No. | Invoice Date | Invoice Amount | Date Cleared | Number of Days from Invoice Date to Clear Date |
|---|---|---|---|---|---|
| Dean Foods Company | 109976197 | 8/16/2019 | $31,680.00 | 10/17/2019 | 62 |
| Dean Foods Company | 110046757 | 8/28/2019 | $19,704.79 | 10/29/2019 | 62 |

The Preference Period began on August 14, 2022. The Subsequent Advances insulate up to

$24,775.50 of the following Transfers, which were made prior to the Subsequent Advances, as

applicable:

| Debtor - Transferor | Invoice No. | Invoice Date | Invoice Amount | Date Cleared | Number of Days from Invoice Date to Clear Date |
|---|---|---|---|---|---|
| Dean Foods Company | 109963664 | 6/14/2019 | $5,071.71 | 8/15/2019 | 62 |
| Dean Foods Company | 109963738 | 6/18/2019 | $33,144.40 | 8/20/2019 | 63 |
| Dean Foods Company | 109927299 | 6/25/2019 | $31,680.00 | 8/27/2019 | 63 |
| Dean Foods Company | 109971264 | 6/25/2019 | $19,704.79 | 8/27/2019 | 63 |
| Dean Foods Company | 109945871 | 6/27/2019 | $15,840.00 | 8/28/2019 | 62 |

---

[6]     For the avoidance of doubt, Kellogg invokes the subsequent advance defense of section 547(c)(4) to the extent
       that the Court determines that the Subsequent Advances are not insulted from avoidance under section 547(c)(2).
       *See SGSM*, 439 F3d at 242 n.7 ("A transfer defended by another § 547(c) defense is an 'otherwise avoidable'
       transfer for the purposes of the subsequent advance defenses.") (emphasis in original).

41.     Kellogg asserts no security interest in the Subsequent Advances.  As a result, and to the extent the ordinary course of business defense does not apply to such Transfers, $24,775.50 of the Transfers are not subject to avoidance by the Trustee.

## **CONCLUSION**

**WHEREFORE**, Kellogg respectfully request the Court enter an order (i) denying the Trustee's request for summary judgment in its favor, and, instead, grant Kellogg summary judgement on its affirmative defenses, and (ii) grant such other an further relief as may be just and proper under the circumstances.

Dated:    November 4, 2022          PACHULSKI STANG ZIEHL & JONES LLP

                                                         */s/ Michael D. Warner*
                                                        Andrew. W. Caine, Esq.
                                                        PACHULSKI STANG ZIEHL & JONES LLP
                                                        10100 Santa Monica Blvd., 13th Floor
                                                        Los Angeles, CA  90067
                                                        Telephone:  (310) 277-6910
                                                        Facsimile:  (310) 201-0760
                                                        Email:  acaine@pszjlaw.com

                                                        -and-

                                                        Michael D. Warner, Esq. (TX Bar No. 00792304)
                                                        Benjamin L. Wallen, Esq. (TX Bar No. 24102623)
                                                        PACHULSKI STANG ZIEHL & JONES LLP
                                                        440 Louisiana Street, Suite 900
                                                        Houston, TX 77002
                                                        Telephone: (713) 691-9385
                                                        Facsimile: (713) 691-9407
                                                        Email: mwarner@pszjlaw.com
                                                                      bwallen@pszjlaw.com

                                                        *Counsel for Defendant, Kellogg Sales Company*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 4, 2022, a true and correct copy of the foregoing pleading was served by the Bankruptcy Court's CM/ECF to all parties that are registered to receive such notice in the Adversary Proceeding.

*/s/ Michael D. Warner*
Michael D. Warner