IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>DEAN FOODS COMPANY, *et al.*,[1]<br><br>　　　　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 19-36314 (DRJ)<br><br>(Jointly Administered) |
| Daniel H. Golden, as Liquidating Trustee of the DFC Liquidating Trust,<br><br>　　　　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>Kellogg Sales Company,<br><br>　　　　　　　　　　　　　Defendant. | Adv. No. 21-03067 |

**PLAINTIFF'S REPLY IN SUPPORT OF SUMMARY JUDGMENT WITH RESPECT TO CLAIMS AGAINST DEFENDANT, KELLOGG SALES COMPANY**

Daniel H. Golden, as Liquidating Trustee of the DFC Liquidation Trust (the "Trustee" or "Plaintiff"), hereby submits this Reply (the "Reply") in Support of Summary Judgment with Respect to Plaintiff's Claims Against Defendant, Kellogg Sales Company (the "Defendant").

**SUMMARY OF ARGUMENT**

In its Response, Defendant submits two principal arguments for why summary judgment in favor of Plaintiff is not appropriate. Neither of Defendant's arguments give rise to a genuine issue of material fact that would preclude summary judgment for Plaintiff. First, Defendant erroneously argues that a material question of fact exists regarding the hypothetical liquidation

---

[1] The debtors or liquidating debtors in these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Dean Foods Company (9681) and Dean Holding Company (8390). The liquidating debtors' mailing address is: Daniel H. Golden, Trustee, Dean Foods Company Estate & Liquidating Trust, In Care of BRG, 250 Pehle Avenue, Suite 301, Saddle Brook, NJ 07663, Attn: Rick Wright.

1

test under 11 U.S.C. § 547(b)(5) in a case where the claims against each of the Debtors far exceeds distributable value.  Second, Defendant's position that the Transfers qualify under the subjective ordinary course defense completely ignores that any commonality between the Historical and Preference Periods is limited to transactions that took place during the Debtors' slide into bankruptcy by which point their normal payment practices had already dramatically shifted.

## ARGUMENT

**A. The Transfers Enabled Defendant to Receive More Than It Would Have Received If the Transfers Had Not Been Made and Defendant Received Payment of Its Debt to The Extent Provided by The Bankruptcy Code**

The parties agree that the test under Section 547(b)(5) of the Bankruptcy Code examines whether a defendant received more than it would have in a hypothetical chapter 7 distribution of the debtor's estate as it existed on the bankruptcy petition date.  *In re Emas Chiyoda Subsea Limited*, 2020 WL 1696105, * 6 (citing *Moser v. Bank of Tyler (In re Loggins)*, 513 B.R. 682, 707 (Bankr. E.D. Tex. 2014)).

Defendant, citing *In re Tusa-Expo Holdings, Inc.*, 811 F.3d 786 (5th Cir. 2016), implies that the test under 11 U.S.C. § 547(b)(5) should be an arduous one.  However, the Fifth Circuit in *Tusa-Expo Holdings* focused its analysis on the *El Paso Refinery* test which applies to instances where the creditor is **undersecured**.  *Id.* at 792.  Defendant does not contend, nor is there any evidence to suggest, that Defendant held a security interest in assets of the Debtors.  Thus, there is no need to determine the collateral source of the Transfers under the *El Paso Refinery* analysis.

Where, as here, the liabilities of the Debtors far exceed their available assets, the hypothetical chapter 7 liquidation test for general unsecured creditors is straightforward.  As long as distributions in bankruptcy to general unsecured creditors are less than 100%, any payment on account of an unsecured creditor during the Preference Period enables that creditor to receive more than it would have received in liquidation had the payment not been made.  *See, e.g., In re Emas*

*Chiyoda Subsea Limited*, 2020 WL 1696105, * 6 (citing *Burtch v. Masiz (In re Vaso Active Pharmaceuticals, Inc.*), 500 B.R. 384, 394 (Bankr. D. Del. 2013)); *In re Quality Woodwork Interiors, Inc.,* 2007 WL 1662635 (Bankr. S.D. Tex. Jun. 4, 2007) ("When an unsecured creditor receives payment in a case in which the distribution will be less than 100%, the creditor has received 'a greater percentage of his debt' than he would in a hypothetical chapter 7 case.") (citing *Palmer Clay Prods. V.* Brown, 297 U.S. 227 (1936)); *In re Moye,* 2010 WL 11519301, at *13 (Bankr. S.D. Tex. Dec. 23, 2010) (citing *In re Ramirez Rodriguez*, 209 B.R. 424, 429 (Bankr. S.D. Tex. 1997)); *In re Virginia-Carolina Fin. Corp.*, 954 F.2d 193, 198-99 (4th Cir. 1992); *Elliott v. Frontier Props. (In re Lewis W. Shurtleff, Inc.)*, 778 F.2d 1416, 1421 (9th Cir. 1985); *In re Candor Diamond Corp.*, 68 B.R. 588, 595 (Bankr. S.D.N.Y. 1986) ("As a practical matter, this element of a preference is almost always satisfied where a debtor transfers property to an unsecured creditor . . . and the creditor would receive less than 100% in a Chapter 7 liquidation."); *Computer World Sol., Inc. v. Apple Fund, L.P., Astor Partners, LLC (In re Computer World Sol., Inc.)*, 427 B.R. 680, 689 (Bankr. N.D. Ill. 2010); *Scharffenberger v. United Creditors Alliance (In re Allegheny Health),* 292 B.R. 68, 78 (Bankr. W.D. Pa. 2003)).

Defendant argues that Plaintiff has failed to satisfy the chapter 7 liquidation analysis on an estate-by-estate basis. Although Plaintiff disagrees with Defendant's characterization of the evidence as set forth in the Golden Declaration and supported by the underlying pleadings and claims registers in the Bankruptcy Cases, Plaintiff submits the *Declaration of Rick Wright, Managing Director of Berkeley Research Group*, attached hereto as **Exhibit 3** (the "Wright Declaration"). As stated in the Wright Declaration, general unsecured creditors of each bankruptcy estate can expect to receive no greater than a miniscule fraction of the allowed amount of their claims. This would be the case even if all of the estimated distributable value for creditors ($17.6

3

million) was lumped into the bankruptcy estate with the least amount of claims ($600 million). It follows that there are no plausible circumstances in which Defendant, as a general unsecured creditor, could have received as much or more in a hypothetical chapter 7 liquidation had the Transfers not been made, and Defendant has offered no evidence to suggest otherwise.

    **B. The Subjective Ordinary Course of Business Defense Under 11 U.S.C. § 547(c)(2) Fails Because the Transfers Were Part of a New Paradigm and Not On Par With Historical Practices**

There is no dispute that the vast majority of the Transfers were paid within a range of 61-65 days after invoice date. There is also no dispute that a minority of payments prior to the Transfers were paid within the same timeframe. However, Defendant's conclusion that the Transfers must be subjectively ordinary on this basis completely ignores that the bulk of the historical 61-65 day payments occurred only in the final few months leading up to the Preference Period, at a time when the Debtors were already far down the path to bankruptcy.

The relevant timeframe from which to compare the Transfers is the period of time when the Debtors were healthy. *See* Plaintiff's Memorandum, § E.2(d). The Debtors were facing significant liquidity problems no earlier than the second quarter of 2019. *Id.* Concurrently with their declining liquidity, the Debtors engaged in a material shift in payment practices with Defendant by beginning to regularly pay invoices 60 or more days past invoice date. This change was so unusual as compared to their prior dealings that Defendant was forced to internally review and update the Debtors' payment terms in its records, which up to that point reflected net-45 day terms. Attached hereto as **Exhibits 4** and **5** is email correspondence from May 2019 demonstrating Defendant's confusion surrounding the Debtors' shift in behavior. In addition to establishing collection pressure in the form of a credit hold, this correspondence provides further affirmation that, prior to May 2019, Defendant had no expectation that the Debtors would pay invoices 60 or more days past invoice date.

As one bankruptcy court noted while examining a similarly abrupt shift in payment practices coinciding with a debtor's financial decline, "[d]elaying payments to a vendor by nearly two weeks as a result of liquidity concerns patently establishes that relations between the Debtor and the Defendant were no longer ordinary and that a new paradigm had arisen in response to the Debtor's financial difficulties." *Siegel v. Russellville Steel Co., Inc. (In re Circuit City Stores, Inc.)*, 479 B.R. 703, 710 (Bankr. E.D. Va. 2012)). In the case at bar, the Debtors' shift is even more dramatic that that in *Siegel*, as the average time for payment was 21.8 days through April 2019, before dramatically shifting to an almost exclusive range of 61-65 days. Prior to April 30, 2019, only 7 of 133 invoices (5.3%) were paid within a 61-65 day range (and just 3 of 115 invoices (2.6%) prior to February 2019). *See* Golden Decl., Ex. D.

The Debtors' deteriorating finances resulted in a new paradigm where the timing of payments tripled. The Transfers followed this new paradigm, as opposed to the parties' normal course of dealing. Because the test for subjective ordinariness emphasizes the period of time before a debtor's payment practices are impeded by financial problems, the Transfers are not ordinary and are not protected from avoidance.

## CONCLUSION

For the reasons herein and in Plaintiff's Memorandum, Plaintiff respectfully requests that this Court enter an order granting summary judgment in favor of Plaintiff.

Dated: November 21, 2022                    ASK LLP

*/s/ Nicholas C. Brown*
Joseph L. Steinfeld, Jr., Esq., MN SBN 0266292
Kara E. Casteel, Esq., MN SBN 0389115
(*admitted pro hac vice*)
Nicholas C. Brown, Esq., NC SBN 38054
(*admitted pro hac vice*)
2600 Eagan Woods Drive, Suite 400
St. Paul, MN  55121
Telephone: (651) 289-3850
Fax: (651) 406-9676
Email: jsteinfeld@askllp.com
            kcasteel@askllp.com
            nbrown@askllp.com

*-and-*

Edward E. Neiger, Esq.
60 East 42nd Street, 46th Fl.
New York, NY  10165
Telephone: (212) 267-7342
Email:  eneiger@askllp.com

*Counsel to Daniel H. Golden, Liquidating Trustee of the DFC Liquidating Trust*

6

## CERTIFICATE OF SERVICE

I certify that on November 21, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Nicholas C. Brown*
Nicholas C. Brown